**Robert P. ALVAREZ and Maria Alvarez, Appellants,**

v.

**UNION MORTGAGE CO., INC., Appellee.**

No. 04-87-00012-CV.

Court of Appeals of Texas, San Antonio.

March 9, 1988.

Peter Torres, Jr., San Antonio, for appellants.

Javier Padillo, San Antonio, Randall L. Freeman, Dallas, for appellee.

Before ESQUIVEL, BUTTS and CHAPA, JJ.

## OPINION

ESQUIVEL, Justice.

This is an appeal from a case involving a dispute arising out of a home solicitation transaction. Robert and Maria Alvarez, appellants, entered into a contract with Texas A–1 Builders, Inc., for home improvements at a cost of $7,950.00. Union Mortgage Company, Inc., appellee, purchased by assignment the retail installment contract and contract for labor and materials and deed of trust from Texas A–1 Builders.

The Alvarezes brought suit against Texas A–1 Builders and Union Mortgage Company for failing to satisfactorily complete the work. Union Mortgage crossclaimed Texas A–1 Builders. Union Mortgage counterclaimed the Alvarezes for failure to pay sums due on the contract, quantum meruit, and fraud. Texas A–1 Builders did not answer nor did it appear. Trial was by jury.

Judgment was entered for appellants against Texas A–1 Builders in the amount of $22,000.00; for appellee against Texas A–1 Builders in the amount of $7,950.00; and for appellee against appellants in the amount of $7,950.00 and $5,000.00 attorney's fees. Appellants' motion for new trial was overruled, and this appeal resulted. Texas A–1 Builders is not a party on appeal.

Appellants assert that the jury's answers to special issues imposed a liability on Texas A–1 Builders which should have inured to appellants' benefit and negated appellants' liability to appellee. Additionally, appellants contend that appellee could not recover without showing positive damages, being the contract price less the cost to complete the work. Appellants claim that the trial court erred in overruling their motion for new trial.

In response to special issues the jury found that Texas A–1 Builders warranted that the work would be performed in a good and workmanlike manner; knowingly failed to perform in a good and workmanlike manner; knowingly represented that

the service would be of a particular standard, quality, or grade when in fact they were not; and knowingly engaged in an unconscionable action or course of conduct in dealing with appellants. The jury found that Texas A–1 Builders' conduct was a producing cause of appellants' damages, and the reasonable and necessary cost to appellants to repair and complete the construction work was $12,000.00. The jury found that $10,000.00 should be awarded to appellants as additional damages against Texas A–1 Builders.

Further, the jury found that appellants made false representations about material facts, upon which appellee relied to its detriment. The jury found that the representations were made with the intent of inducing appellee to accept the assignment from Texas A–1 Builders, and that appellants' representations were a proximate cause of damages to appellee. However, the jury found $0.00 in damages for the false representations.

The jury also found that appellants breached the contract. Damages for appellants' breach of contract were found to be $7,950.00.

The contract in this case contains a notice provision required by the Federal Trade Commission which states:

## NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

16 C.F.R. § 433.2 (1987).

The Texas Supreme Court has observed:

In adopting this rule, the FTC determined that a consumer credit transaction, which separated the consumer's duty to pay from the seller's duty to fulfill his obligations, constituted an unfair and deceptive practice. The rule was aimed primarily at situations in which a seller executed a credit contract and then assigned the contract to a credit company which took it free and clear of any claims and defenses the buyer had against the seller. The creditor's status as a holder in due course operated to cut off claims and defenses such as breach of contract, breach of warranty, misrepresentation, or fraud on the part of the seller. The reciprocal duties of the buyer and seller which were mutually dependent under ordinary contract law became independent of one another. Thus, the buyer's duty to pay the creditor was not excused upon the seller's failure to perform. In abrogating the holder in due course rule in consumer credit transactions, the FTC preserved the consumer's claims and defenses against the creditor-assignee. The FTC rule was therefore designed to reallocate the cost of seller misconduct to the creditor. The commission felt the creditor was in a better position to absorb the loss or recover the cost from the guilty party—the seller.

*Home Savings Association v. Guerra*, 733 S.W.2d 134, 135 (Tex.1987) (citations omitted).

■ Thus, contractually, appellee is subject to whatever defenses appellants could assert against Texas A–1 Builders.

Appellee relies on *Home Savings* to argue that appellee is not directly liable to appellants, since appellants have not proven an independent cause of action against appellee; and that appellee is not derivatively liable for any amount because appellee's liability is limited to the amount paid by appellants and appellants have not paid anything to appellee under the contract. *See Home Savings v. Guerra* at 136–37. *Home Savings*, however, is distinguishable.

*Home Savings* dealt with a debtor seeking an affirmative recovery under the contract terms. In the instant case, appellants are seeking to avoid a recovery by appellee, utilizing defenses assertable against Texas A–1 Builders: failure to perform the work.

■ Appellee argues that appellants should not be able to avoid payment under the contract since appellants fraudulently induced appellee to take by assignment. Appellee introduced evidence to show that appellants signed a certificate of completion, although the work had not been completed, and that appellants told appellee that they were satisfied with the work performed by Texas A–1 Builders. Appellee points out that the jury found that appellants made fraudulent misrepresentations to appellee, upon which appellee relied to its detriment, and that the representations were made with the intent of inducing appellee to accept the assignment.

Although the jury found that the representations were a proximate cause of damages to appellee, the jury also found that the sum of money which would compensate appellee for damages resulting from appellants' representations was $0.00.

Appellee does not complain on appeal of the jury's finding $0.00 in damages for the misrepresentations. We are bound by the finding. The $7,950.00 awarded to appellee against appellants only represents damages for failure to pay under the contract. Therefore, the misrepresentations of appellants have no bearing on this appeal.

■ In a suit for payment under construction contract, a contractor is entitled to recover the contract price less what it would cost to complete the work. *Deal Development Co. v. Amarillo Concrete Contractors, Inc.*, 554 S.W.2d 294, 296 (Tex.Civ.App.—Waco 1977, no writ).

In the present case, the contract price was $7,950.00, and the cost to complete the work is $12,000.00. Accordingly, appellee is not entitled to recover any amount from appellants.

We sustain appellants' points of error.

We note that appellee has a judgment against Texas A–1 Builders in the amount of $7,950.00. The outcome of this case is in accordance with the purpose of the FTC rule. The cost of seller misconduct is allocated to the creditor-assignee who must look to recover the cost from the seller.

Accordingly, the judgment against appellants and in favor of appellee for $7,950.00 and $5,000.00 attorney's fees is reversed. We render judgment that appellee take nothing against appellants.